IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LISA R. LEE

*v.*

UNITED STATES OF AMERICA

Criminal Action No.
1:10-CR-345

Civil Action No.
1:14-CV-1453

**Government's Response to Lisa Lee's 28 U.S.C. § 2255
Motion to Vacate, Set Aside, or Correct Sentence**

The United States of America, by Byung J. Pak, United States Attorney, and J. Elizabeth McBath, Assistant United States Attorney for the Northern District of Georgia, hereby files this Response to Lisa Lee's 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence.[1]

## 1. Procedural Background

On August 10, 2010, Lee was indicted by a federal grand jury sitting in the Northern District of Georgia with conspiring to commit bank fraud, in violation of 18 U.S.C. § 1349; substantive bank fraud, in violation of 18 U.S.C. § 1344; and aggravated identity theft, in violation of 18 U.S.C. § 1028A. (Doc. 1). Lee pleaded guilty to all counts and was sentenced to 97 months' imprisonment for the conspiracy and bank fraud counts, to be followed by a consecutive 24 months'

---

[1] The government respectfully moves for permission to exceed the page limit set forth in the local rules. (L.Civ.R. 7.1D) (establishing a limit of 25 pages in civil motions). Lee's § 2255 petition constitutes 16 pages of allegations, doc. 88-1, and her memorandum of law in support constitutes 30 pages, doc. 106-2. In an effort to address each and every allegation, the government has exceeded the page limit here.

imprisonment for the aggravated identity theft count, for a total term of 121 months' imprisonment. (Doc. 70). Lee was also sentenced to five years' supervised release and was ordered to pay a $300 special assessment and $561,019.29 in total restitution. (*Id.*).

Lee filed a direct appeal, and the Eleventh Circuit affirmed her conviction and sentence on February 5, 2013. (Doc. 84). The Supreme Court of the United States denied Lee's petition for a writ of certiorari on October 9, 2013. (Doc. 86).

Thereafter, on May 12, 2014, Lee filed a motion to vacate her sentence under 28 U.S.C. § 2255, which the district court denied. (Docs. 88, 112). Defendant appealed, and after briefing and oral argument, the Eleventh Circuit reversed and remanded to this Court "to address [Lee's] allegations of prejudice unrelated to the length of her sentence." *See Lee v. United States*, 707 F. App'x 635 (11th Cir. 2017).

### 2. Factual Background

#### A. Lee's previous federal offense

Approximately seven years before she was indicted in this case, Lee pleaded guilty to mortgage fraud, conspiring to commit an offense against the United States, and mail fraud in Case No. 1:03-CR-043. *See United States v. Lee*, 502 F. App'x 916 (11th Cir. 2012); *see also* Doc. 112-2. In that case, Lee was sentenced to 18 months' imprisonment and three years' supervised release. (Doc. 112-2). Lee was released from prison and began her supervised release on November 20, 2006, and immediately began engaging in "an extensive and sophisticated bank fraud and identity theft scheme from November 2006 through December 2008." (*Id.* at 2). The district court revoked Lee's supervised release on February 5, 2010,

and sentenced her to 23 months' imprisonment with no supervised release to follow. (*Id.* at 3; Docket for Criminal Action No. 1:03-CR-43-02-JEC at 136). Lee was released from prison on August 10, 2010. (*Id.*).

## B.  Lee's criminal conduct in this case[2]

While Lee was serving her term of supervised release, an anonymous caller called the probation office on June 25, 2008, and alleged that Lee was operating a fraudulent "credit enhancement" scheme through a business named Askeier Business Development ("ABD"). (Doc. 48 at ¶ 7; PSR at ¶ 23). The caller provided ABD's business address and two of its bank account numbers. (Doc. 48 at ¶¶ 7-8).

After receiving this tip, Lee's probation officer checked the Georgia Secretary of State website, verified the existence of ABD, and noticed that ABD's chief financial officer was listed to be Defendant's daughter, KD Lee. (*Id.* at ¶ 11). The probation officer traveled to the business address provided by the caller and discovered that it was actually a UPS store. (*Id.* at ¶ 12). While the probation officer was at the UPS store, Lee entered the store and checked a mailbox. (*Id.*). The probation officer approached Lee, who explained that she was checking her daughter's mailbox. (*Id.* at ¶ 13). The UPS manager, however, told the probation officer that ABD maintained the mailbox, and that mail sent there was addressed to ABD and other businesses. (*Id.* at ¶ 14; Doc. 38-82).

---

[2] Lee did not object to these facts in the PSR. *See also* letter to Probation Office from defense counsel, dated February 6, 2012, attached to PSR ("Ms. Lee committed the crimes you have outlined in the PSR and we do not shy away from her guilt.").

Upon further investigation, officers learned that ABD was an actual company owned by victim K.A., who explained that she had deactivated ABD in Georgia and had moved the business to North Carolina; that she did not know Lee or her daughter; and that she had given no one permission to reinstate the company with the Georgia Secretary of State. (PSR at ¶¶ 23-25). Officers also spoke to SunTrust Bank about the bank account the caller had identified, and the bank explained that they had flagged this ABD account as suspicious. (*Id.* at ¶¶ 27-28). Officers further spoke to First Data Merchant, a credit card processing company that had sold a processing machine to Lee, and learned that First Data Merchant had also flagged Lee's account as suspicious because all 18 transactions she used the machine for involved credit card transactions where the credit card numbers were typed in, rather than the card being swiped. (*Id.* at ¶¶ 29-31).

Officers ultimately determined how Lee executed her fraudulent scheme on over 200 companies. (*Id.* at ¶ 16). She first identified businesses that were inactive, and reactivated their Georgia Secretary of State corporate status. (Doc. 112-3; PSR at ¶ 3). With each business, she revitalized the victim corporations' Dun & Bradstreet credit information and submitted false qualifying information to obtain new corporate lines of credit with both retailers and banks. (PSR at ¶¶ 3, 24). She then accessed this credit through purchases and cash withdrawals. (*Id.*). In executing this fraud, Lee recruited "participants," all of whom had poor personal credit, and charged them a "fee" of between $700 and $10,000 for her

4

"services," which involved her granting them access to the corporate lines of credit she had secured. (*Id.* at ¶ 17).[3]

In addition, Lee's fraud was not restricted to just this corporate-credit-enhancing scheme; she also committed substantive bank fraud. On November 28, 2008, an unindicted coconspirator opened a business checking account at SunTrust bank in the name of Photo Books. (*Id.* at ¶ 145). The conspirator fraudulently identified herself as K.M. (*Id.*). She gave SunTrust a counterfeit check in the amount of $189,000 drawn on the account of Piedmont Hospital.[4] (*Id.*).

Three days later, on December 1, 2008, another unindicted coconspirator opened a checking account at Flagstar Bank in the name of Photo Books. (*Id.* at ¶ 146). In doing so, the coconspirator presented an account application purportedly signed by victim K.M. and a counterfeit Georgia driver's license in the name of K.M. (*Id.*). This driver's license bore a photograph of Lee herself (*Id.*). The coconspirator deposited a counterfeit SunTrust bank check written on the account of Piedmont Hospital for $ 171,000. (*Id.* at ¶ 5).[5],[6]

---

[3] This conspiracy to defraud was charged in count one of the indictment. (Doc. 1).

[4] This substantive bank fraud was charged in count two of the indictment. (Doc. 1).

[5] This aggravated identity theft was charged in count three of the indictment. (Doc. 1).

[6] In addition, while not charged in the indictment but serving as relevant conduct, the PSR described Lee defrauding CTG financial services ("CTG") by selling them fake receivables. (PSR at ¶ 149). When officers searched her home and office, they found invoices, bills of lading, and shipping receipts that were submitted to CTG for payment. (PSR at ¶ 152). They also found correspondence

Officers searched Lee's residence, business, and person. With regard to count one, when searching Lee's residence, they found hundreds of D&B and Georgia Secretary of State records evidencing the fraud. (*Id.* at ¶ 16). Officers further found in Lee's purse documents related to ABD. (Revocation Hearing Transcript from Case No. 1:03-CR-043, Doc. 136, Exs. 11.1 and 11.2). At her office were documents from the UPS mailbox; credit cards in ABD's name; the Georgia Secretary of State registration for ABD; the VISA credit card used to register ABD with the Secretary of State; Dun & Bradstreet documents for ABD; and a fax to Home Depot purportedly from K.A.. (*Id.* at Exs. 4C3, 4C4, 11.1, and 11.2).

With respect to the substantive bank fraud and the aggravated identity theft counts, officers found on Lee's person a counterfeit driver's license in K.M.'s name, a loan application to First Financial in K.M.'s name,[7] and a copy of K.M.'s actual driver's license. (PSR at ¶¶ 14, 140). They also found in Lee's purse six counterfeit checks drawn on the SunTrust Bank account of Piedmont Hospital that were similar to the counterfeit check used to open the Flagstar account. (*Id.* at ¶¶ 146, 148).

---

from CTG to ABD demanding payment for invoices. (PSR at ¶ 152). On Lee's computer, officers found additional documents used in her scheme to defraud CTG. (PSR at ¶ 152). This fraudulent conduct resulted in an actual loss of $141,574 and intended loss of $141,574. (PSR at ¶ 157).

[7] Lee acquired K.M.'s identifying information after K.M. applied for a car loan with First Financial. (PSR at ¶ 142). Lee worked for First Financial at that time. (PSR at ¶ 141). A box containing hundreds of loan applications and financial documents belonging to First Financial were found in Lee's possession at the time of her arrest. (PSR at ¶ 142).

After the probation office's investigation and search of Lee's house and business, the probation office moved to revoke her supervised release. (Docket for Case No. 1:03-CR-043 at 124). At the revocation hearing, Lee admitted to conspiring to devise the credit-enhancing scheme to defraud banks of money; admitted to executing the scheme to defraud both SunTrust Bank and Flagstar Bank; and admitted to using K.M.'s identifying information when defrauding SunTrust and Flagstar. (Docket for Case No. 1:03-CR-043 at 136-8). The district court thus revoked Lee's supervised release and sent her to prison for 23 months' imprisonment. (Doc. 112-3; Docket for Case No. 1:03-CR-043 at 136).

On August 10, 2010 — the day that Lee was released from prison after serving her supervised release revocation term of imprisonment — a federal grand jury indicted her in this case for the same fraudulent acts for which her supervised release was revoked. (Doc. 1; Doc. 112-3; Docket for Case No. 1:03-CR-043 at 136).

### C. Lee's sentence and direct appeal

Lee pleaded guilty to all charges against her. (Doc. 59). At the sentencing hearing, the district court calculated Lee's Guidelines range on the conspiracy and bank fraud counts to be 97-121 months. (Doc. 112-4). Lee did not object to the PSR's Guidelines calculations, and the district court sentenced her at the low-end, to 97 months' imprisonment, to be followed by the mandatory 24 months' imprisonment on the aggravated identity theft count. (*Id.* at 4-5).

Lee filed a direct appeal, arguing one issue only: that her sentence was substantively unreasonable. (Doc. 83; *United States v. Lee*, 502 F. App'x 916, 918 (11th Cir. 2012)). The Eleventh Court disagreed, holding the sentence to be reasonable and noting that:

> Lee's offense required sophisticated planning and document fraud, resulting in an actual loss of $561,019.29 and an intended loss of $1,882,740.92. Considering the scope and sophistication of Lee's conduct and the harm that she intended to cause, a sentence within the guideline range adequately reflects the seriousness of her sentence.

*Lee*, 502 F. App'x at 918.

### D. Lee's § 2255 motion

After losing her direct appeal, Defendant filed a motion to vacate under 28 U.S.C. § 2255 on May 12, 2014. (Doc. 88-1). In this motion, Lee alleged that her counsel was ineffective during all four stages of prosecution: the investigation, the plea, the sentence, and the appeal. (*Id.*). In analyzing the motion, the district court found that the only argument Lee made with respect to prejudice was that "due to her attorney's deficiencies, she received a sentence three or four times longer than she 'should have.'" (Doc. 112-10).

Thus, the district court examined in detail Lee's arguments regarding the sentencing stage and concluded that she was not prejudiced because she was sentenced appropriately. (Doc. 112-16) (concluding, "In sum, none of the adjustments [Lee] imagines should have been argued by her counsel have any merit. Thus, [Lee] cannot show her claim of prejudice for being sentenced to 3 or 4 times as much time as she 'should have been.'"). In addition to finding no prejudice, the district court also found that counsel's performance was not deficient at the sentencing phase. (Doc. 112-20-21) ("It is clear from the court's review of the sentencing proceedings and later correspondence between [Lee] and her counsel (attached to her memo), that [Lee's] counsel was focused on making sure that she could at least obtain the three level downward departure

for acceptance of responsibility. Given the ample evidence of fraud adduced by the Government and not challenged by [Lee] either at her revocation hearing, where incidentally she was represented by different counsel, or in the instant proceedings, the court finds the strategy of [Lee's] counsel in this case to be more than adequate given the circumstances."). The district court thus denied Lee's § 2255 motion.

### E.  Lee's appeal of the district court's denial of her § 2255 motion

After the district court denied Lee's § 2255 motion, she sought to appeal that ruling. In examining Lee's request for a certificate of appealability, the Eleventh Circuit noted that the district court addressed, in detail, Lee's claims regarding sentencing, and thus refused to grant Lee a certificate of appealability on her ineffective assistance claims at that stage of the prosecution. (Doc. 119). After excluding any issues related to sentencing, the Eleventh Circuit issued a certificate of appealability, limiting analysis to the investigation, plea, and appeals stages only:

> Whether the district court erred when it summarily denied relief on Lee's claims that her counsel was ineffective during the investigation, plea, and appellate stages of her criminal case, on the ground that Lee failed to allege prejudice as to those claims.

*Id.*

After briefing and oral argument, the Eleventh Circuit concluded that, while the district court thoroughly examined Lee's claims of prejudice at the sentencing stage, it "did not analyze whether Ms. Lee was prejudiced by counsel's performance at the investigation, plea, or appellate stages." *Lee v. United States*,

707 F. App'x 635, 638 (11th Cir. 2017). The Eleventh Circuit thus reversed the district court's denial of Lee's § 2255 motion and remanded with instructions that this Court "liberally construe Ms. Lee's *pro se* filings and address the allegations of prejudice unrelated to the length of her sentence." *Id.* at 641. The Eleventh Circuit left "the question of whether this Court should hold a hearing as an aid to decide the merits of Ms. Lee's assertions of prejudice" to the discretion of this Court. *Id.* at 638. In accordance with these instructions, the Government responds here to Defendant's allegations that her counsel was ineffective at the investigation, plea, and appeals stages of her prosecution.

**3.  Legal Argument**

### A. Lee's § 2255 motion should be denied because Lee has failed to meet her burden of proving prejudice.

To establish a claim of ineffective assistance under the Sixth Amendment, a defendant must show: (1) that her counsel's performance fell below an objective standard of reasonable professional assistance; and (2) there is a reasonable probability that the outcome would have been different but for her lawyer's unprofessional errors. *Strickland v. Washington*, 466 U.S. 668 (1984). A court need not "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. The Eleventh Circuit's remand instructs this Court to "address [Lee's] allegations of prejudice unrelated to the length of her sentence." *Lee*, 707 F. App'x at 641.

Lee's precise allegations of ineffective assistance can be difficult to pinpoint, and the district court in the first instance no doubt did its best in trying to do so.

Now on remand, the Government lists every one of Defendant's allegations, no matter how briefly made, in an effort to leave nothing unaddressed.

   **1. Lee has failed to meet her burden of proving her allegations of prejudice at the investigation stage of her prosecution.**

With respect to the investigation stage, Lee claims that:

- Counsel failed to challenge the indictment based on the ground that it does not include the words "Filed in Open Court" on its face, (Doc. 88-1 at 1; Doc. 106-2 at 100);

- Counsel failed to object to the indictment based on the ground that it states, "Foreman," and not "Grand Jury Foreman," (Doc. 106-2 at 2);

- Counsel failed to object to the indictment because it was signed on the same day that Defendant was released from custody, (Doc. 106-2 at 10);

- Counsel failed to object to the indictment on the ground that count two did not allege an essential element, (Doc. 106-2 at 13);

- Counsel failed to object to the indictment on the ground that count two did not fully inform her of the charge against her, (Doc. 106-2 at 13);

- Counsel failed to raise a Speedy Trial Act claim, (Doc. 88-1 at 1; Doc. 106-2 at 20);

- Counsel failed to seek a hearing under *United States v. Kastigar*, (Doc. 88-1 at 1-2);

- Counsel failed to interview 21 people listed in the PSR, (Doc. 88-1 at 2);

- Counsel did not interview or subpoena witnesses or documents, (Doc. 88-1 at 4);

- Counsel did not obtain the previous attorney's case file, (Doc. 88-1 at 4); and

- Counsel did not show Lee all of the evidence in counsel's possession so that Defendant could adequately prepare a defense, (Doc. 88-1 at 4).

These 11 investigation-stage allegations are perhaps most easily analyzed by organizing them into four separate categories: (1) the five arguments addressing the indictment itself; (2) the one argument addressing the Speedy Trial Act; (3) the one argument addressing a *Kastigar* hearing; and (4) the four arguments addressing defense counsel's investigation of the claims brought against Lee.

As a threshold matter, though, Lee waived her right to make these investigation-stage arguments. A defendant who pleads guilty — as Lee did here — waives all non-jurisdictional challenges on collateral attack; specifically here, a valid guilty plea waives any pre-plea ineffective assistance claims that do not concern his decision to enter the plea. *See United States v. Wilson*, 962 F.2d 996, 997 (11th Cir. 1992); *Baird v. United States*, 445 F. App'x 252, 254 (11th Cir. 2011) ("where a conviction is based on a guilty plea, the defendant waives all non-jurisdictional challenges, including that of a constitutional nature. This rule applies equally to direct appeal and collateral attack: a § 2255 movant who entered a valid guilty plea waives any pre-plea ineffective assistance claims that do not concern his decision to enter the plea.").

Lee's arguments regarding the indictment

To begin, Lee has not, and cannot, meet her burden of proving prejudice on her arguments addressing the indictment itself — that is, her allegations regarding the "Filed in Open Court" and "Grand Jury Foreman" language, the date of signature, and count two's pleading. To show prejudice, a defendant must show "a reasonable probability that, but for counsel's deficiency, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 2068. For Lee's investigation-stage claims of prejudice, this means that she must show "a

reasonable probability that a motion to dismiss the indictment would have been granted." *Zeigler v. Crosby*, 345 F.3d 1300, 1309 (11th Cir. 2003)**.** It is simply not reasonable to conclude that, had defense counsel raised these objections below, the indictment against Lee would have been dismissed.

Both the Supreme Court and Eleventh Circuit hold that a district court may not dismiss an indictment (even for prosecutorial misconduct) without a showing "that the violation substantially influenced the grand jury's decision to indict." *Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988); *United States v. Exarhos*, 135 F.3d 723, 726-27 (11th Cir. 1998); *see also United States v. Cotton*, 535 U.S. 625 (2002) (defects in an indictment are not jurisdictional); *United States v. Lennick*, 18 F.3d 814 (9th Cir. 1994) (an argument that an indictment does not say "filed in open court" is reviewed for harmless error); *United States v. Clarkston*, 321 F. App'x 534 (8th Cir. 2009) (a defendant's argument that the indictment did not include the words "filed in open court" is not jurisdictional).

Regarding Lee's assertions about the "Jury Foreman" language, it is utterly nonsensical to conclude that had the indictment read "Grand Jury Foreman," instead of "Jury Foreman," the grand jury would not have indicted Lee. So too with Lee's assertions regarding the "Filed in Open Court" language. An indictment is filed only if the grand jury indicts. *See* Fed. R. Crim. P. 6(f) (providing that a grand jury may indict, after which the foreman must return the indictment). This means that the words "Filed in Open Court" were added after the grand jury had voted to indict. To conclude that the jury would not have indicted had they known that the foreman would subsequently return the indictment to the clerk of court, and not in open court, is patently ridiculous. *See*

*United States v. Lennick*, 18 F.3d 814 (9th Cir. 1994) (finding the failure of the grand jury foreman to hand the returned indictment to the clerk in open court to be harmless as "[n]othing suggests that the grand jury would have failed to return the indictment had the" foreman done so).

With respect to Lee's assertions regarding the language of count two, this allegation is baseless. Title 18, United States Code, Section 1344 provides that:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice –
>
> > (1) to defraud a financial institution; or
> >
> > (2) to obtain any of the moneys, funds, credits, asserts, or securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
>
> Shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344. The indictment charged Lee in count two as follows:

> On or about December 1, 2008, in the Northern District of Georgia and elsewhere, defendant LISA R. LEE, aided and abetted by others, knowingly executed and attempted to execute a scheme and artifice to defraud, Flagstar Bank, a financial institution, and to obtain money, funds, credits, assets, securities, and other property owned by and under the custody and control of such financial institution, to wit; defendant LEE opened a business checking account for a company "Photo Books" at Flagstar Bank, by depositing a counterfeit SunTrust Bank check purportedly written on the account of "P.H." for $171,000, in violation of Title 18, United States Code, Sections 1344 and 2.

The indictment directly tracks the statutory language, and leaves out no elements. In addition, the indictment fully informed Lee of the charge against

her. *See United States v. Wayerski*, 624 F.3d 1342, 1349 (11th Cir. 2010) (holding that the indictment sufficiently charged the defendant with a crime where it "specifically referred to and tracked the language of the statute on which it was based"). Any motion to dismiss on this ground would have been dismissed. *Id.*

Finally, with respect to Lee's argument that the indictment was signed on the same day that she was released from custody, this fact is of no legal moment. The only possible basis of a claim like this the government can surmise would be a violation of the statute of limitations; but that claim is not made here, nor could it have been. A motion to dismiss the indictment on this argument would therefore have likewise failed.

Lee's arguments regarding the Speedy Trial Act

While Lee claims that her trial counsel was ineffective by failing to move to dismiss the indictment as violating the Speedy Trial Act or her constitutional right to a speedy trial, she cannot show that, even if counsel had advanced these arguments below, the indictment against her would have been dismissed. First, regarding pre-trial delay, Lee was arrested within two days of her indictment. (Doc. 1, 5, 16). And the Eleventh Circuit holds that a defendant is not arrested for purposes of speedy trial until she is arrested on the substantive counts themselves; that is, an arrest for violation of supervised release does not start the speedy trial clock. *United States v. Keel*, 254 F. App'x 759 (11th Cir. 2007). Because the arrest and indictment happened within days of each other, there was no pre-indictment speedy trial violation.

Nor was there any post-indictment speedy trial violation. The Speedy Trial Act requires a criminal defendant's trial to begin within 70 days of her

indictment or initial appearance, 18 U.S.C. § 3161(c)(1), and entitles a defendant to dismissal of the charges against her if that deadline is not met, § 3162(a)(2). The Act, however, automatically excludes from the 70-day period "delay resulting from . . . proceedings concerning the defendant," § 3161(h)(1), and separately permits a district court to exclude "delay resulting from a continuance it grants," § 3161(h)(7). With respect to a constitutional speedy trial violation under the Sixth Amendment, a delay is "presumptively prejudicial as it approaches one year." *United States v. Davenport*, 935 F.2d 1223, 1239 (11th Cir. 1991). Here, only 36 days elapsed between indictment and Lee's plea.[8] Consequently, even had defense counsel moved to dismiss the indictment, such a motion would not have been granted.

Lee's arguments regarding *Kastigar*

Lee alleges that her trial counsel was ineffective because he failed to challenge the indictment based on the government's use of information she gave in a proffer session after being promised immunity. In *Kastigar v. United States*, 406 U.S. 441 (1972), the Supreme Court held that, while the government may

---

[8] The following time period was excluded from speedy trial calculations: (1) August 29, 2010 through September 10, 2010, for time to file pretrial motions (doc. 17, 18); (2) September 8, 2010 through March 30, 2011, for time after Lee filed pretrial motions until the magistrate court issued a Report and Recommendation, (doc. 19, 48); (3) March 30, 2011, through April 27, 2011, for the time the parties had to object to the Report and Recommendation, (doc. 48); (4) April 27, 2011, through May 27, 2011, for the time the district court had to adjudicate the motion to suppress, (doc. 48); and (5) May 20, 2011 through July 31, 2011, under a joint motion to continue so that the parties could continue to negotiate a plea, (doc. 56, 57). Thus, the period of time not excluded was August 10, 2010 to August 29, 2010 — 19 days — plus July 31, 2011 to August 17, 2011 — 17 days — for a total time not excluded of 36 days.

prosecute someone who previously gave self-incriminating testimony under a promise of immunity, the government is prohibited from "using the compelled testimony in any respect" that would "lead to the infliction of criminal penalties." *Id.* at 453. When the government does use immunized testimony, however, the Eleventh Circuit rejects a *per se* rule for the district court in dismissing the indictment; instead, use of the testimony is subject to harmless error review. *United States v. Pielago*, 135 F.3d 703 (11th Cir. 1998); *United States v. Schmidgall*, 25 F.3d 1523 (11th Cir. 1994).

Lee claims that she had a proffer session with the government before she was indicted. *Lee*, 707 F. App'x at 638-39. According to Lee, "the government promised that if Lee cooperated, no information given to them was to be used to indict" her. *Id.* at 639. Lee further asserts that she explained to the government at the proffer that she "worked for the people who were doing illegal things," but that once she "was aware of it she left and dissociated herself from these people." (Doc. 106-2 at 5-6). She also claims to have told the government "how her photo came to be in the hands of the 'bank fraudster,'" and "identified the man from the bank surveillance photographs." (*Id.*). But "she refused to help the 'fraudster'" commit the bank fraud charged, and, instead, "sat in the car," while "he threatened her for refusing to help him negotiate the fraudulent transaction." (*Id.*).

Even taking all of these assertions as true — that is, assuming that Lee told the government these things at the proffer session and that the government presented her statements to the grand jury — her statements are all self-serving, exculpatory explanations that, if believed, would exonerate her of any

17

wrongdoing. Thus, even had the government presented these statements to the grand jury, this Court would not have dismissed the indictment at a *Kastigar* hearing because the immunized statements were not self-incriminating at all — instead, they were self-serving — and thus did not give the grand jury inculpatory evidence on which to indict.

And anyway, the evidence the government had before presenting its case to the grand jury — and before any proffer session occurred — was overwhelming. The PSR chronicles all of the investigation that officers did *before* arresting Lee (and thus *before* any proffer took place), including interviewing numerous participants and victims; speaking to UPS, Flagstar Bank, SunTrust Bank, and First Data Merchant; searching Lee's home, business, and person; seizing hundreds of documents evidencing all three offenses charged in the indictment; and hearing Lee herself admit to all allegations at her supervised release revocation hearing. *See, e.g.*, PSR at ¶¶ 46, 65, 82, 93, 100, 115, 129; Doc. 38-46-47, 79; Docket for Case No. 1:03-CR-4302-JEC at 136. Lee cannot show that she was prejudiced by counsel's decision not to ask for a *Kastigar* hearing.

Lee's arguments regarding defense counsel's investigation

Lee claims that defense counsel: (1) failed to interview 21 people listed in the PSR; (2) did not interview or subpoena any witnesses or documents; (3) did not obtain the previous attorney's case file; and (4) did not show Lee the evidence in his possession. But Lee makes no showing that the PSR witnesses, or any witnesses or documents for that matter, would have given helpful information to the defense. *See Hembree v. United States*, 307 F. App'x 412, 418-19 (11th Cir. 2009) (citing *Fortenberry v. Haley*, 297 F.3d 1213 (11th Cir. 2002)). Nor does Lee explain

18

how counsel's failure to retrieve the prior attorney's case file, or not showing Lee his own case file, prejudiced her in any way. This is fatal to her claim.

**2.  Lee has failed to meet her burden of proving prejudice at the plea-stage of her prosecution.**

With respect to the plea stage, Lee claims that:

· Counsel did not explain the elements to her, (Doc. 88-1 at 5);

· Counsel did not inform her that she could plead guilty to just one count, (Doc. 88-1 at 5);

· Counsel incorrectly told her that even if she only had her picture taken, she would still be guilty of aiding and abetting, (Doc. 88-1 at 5);

· Counsel incorrectly told her that she need not have intended to defraud the bank to be guilty of the offenses charged against her, (Doc. 88-1 at 5);

· Counsel incorrectly told her that as long as she "associated" with someone, she was guilty of conspiracy, (Doc. 88-1 at 5); and

· Counsel failed to explain to Lee that facts in the PSR not objected to, are agreed to, (Doc. 88-1 at 2).

For plea-stage claims of prejudice, a defendant must show "a reasonable probability that, but for counsel's efforts, she would not have pleaded guilty and would have gone to trial." *Jae Lee v. United States*, 137 S. Ct. 1958, 1965 (2017). This she cannot do.

First, the Rule 11 colloquy belies Lee's argument. More specifically, it is not reasonable to believe that Lee would have gone to trial had counsel simply explained the charges against her or had counsel not allegedly gotten the law wrong. Instead, the record shows that, whatever counsel did or did not do, the district court did, in fact, explain the charges and the law. Thus, even taking her allegations as true, the district court cured any prejudice that may have resulted

from incorrect advice. *See United States v. Wilson*, 245 F. App'x 10 (11th Cir. 2007) (affirming the district court's denial of the defendant's § 2255 motion alleging ineffective assistance at the plea stage for purportedly misinforming the defendant of his sentencing exposure, and holding that "the defendant could not show prejudice because he acknowledged at the Rule 11 hearing that he understood the sentence could be higher than his lawyer told him."); *see also United States v. Evans*, 478 F.3d 1332 (11th Cir. 2007) (holding that the district court did not misconstrue the elements of the offense at the Rule 11 hearing, and thus the defendant was not able to show that, but for the alleged error, he would not have entered the guilty plea).

The following chart shows where each of Lee's claims, even assuming they are true, were cured by the district court:

| Lee's claims | Rule 11 Colloquy |
|---|---|
| Defense counsel did not explain the elements of the crimes charged to her. (Doc. 88-1 at 5). | The district court correctly explained to Lee the elements of each crime charged. (Doc. 125-5-7, 9-11, 14). |
| Defense counsel incorrectly told her that, so long as she had her picture taken, she was still guilty of aiding and abetting bank fraud under count two, and also incorrectly told her that the Government did not need to prove that she intended to defraud the bank to be guilty of bank fraud. (Doc. 88-1 at 5). | The district court correctly explained to Lee the evidence the Government had against her on the bank fraud count. (Doc. 125-10). The district court correctly explained to Lee that the Government had to prove that Lee *knowingly* executed a scheme to defraud. (Doc. 125-9). The district court correctly explained to Lee that the Government had to prove that Lee knew what was being done and that it was illegal. (Doc. 125-10). |
| Defense counsel incorrectly told her that, so long as she associated with someone else, she was guilty of conspiracy under count one. (Doc. 88-1 at 5). | The district court correctly explained to Lee that the essential element of conspiracy was that she "entered into an agreement to violate the law." (Doc. 125-5-6). |

As for Lee's assertion that defense counsel never told her that allegations not objected to in the PSR are deemed admitted, (doc. 88-1 at 2), she herself admitted during the Rule 11 colloquy that she committed each of the three crimes charged, that she knew what she was doing was illegal, and that she wanted to plead guilty because she "was wrong." (Doc. 125-17-20). Thus, even if she had initially objected to the facts in the PSR, her earlier confession would have overridden these objections.

That leaves only Lee's argument that she would not have pleaded guilty to all counts had defense counsel told her that she could plead guilty to just one count. (Doc. 88-1 at 5). As with her other plea-stage arguments, however, this one fails because it is simply not reasonable to believe that, had she known she could have pleaded guilty to just one count, she would have done so, and would have gone to trial on the other two counts. This is true because the evidence against her — on *all* counts — was overwhelming. *See Diveroli v. United States*, 803 F.3d 1258, 1265 (11th Cir. 2015) (holding that it would not have been rational for the defendant to reject a plea and proceed to trial where the evidence of guilt was overwhelming and where the defendant had no viable defense; thus, the defendant failed to show that he was prejudiced by ineffective assistance of counsel).

That overwhelming evidence consisted of law enforcement:

- Receiving an anonymous tip that Lee was engaging in fraud while on supervised release;
- Corroborating the tip by investigating the Georgia Secretary of State website; visiting the UPS store and seeing Lee herself arrive there; and talking to UPS management, SunTrust Bank, and First Data Merchants.

· Locating the actual owner of ABD and confirming that she neither knew Lee nor gave Lee permission to reactivate ABD's corporate status in Georgia;

· Seizing:

> · hundreds of Dun & Bradstreet documents and Georgia Secretary of State documents, including documents associated with ABD and 200 other businesses;
>
> · the VISA card used to pay ABD's registration with the Secretary of State;
>
> · the actual Georgia Secretary of State corporate registration for ABD;
>
> · the UPS mailbox documents for ABD;
>
> · a fax to Home Depot from ABD;
>
> · a credit card in ABD's name;
>
> · a SunTrust Bank account statement for ABD;
>
> · a counterfeit driver's license with victim K.M.'s name on it;
>
> · a loan application that K.M. had made with First Financial;
>
> · a copy of K.M.'s actual driver's license; and
>
> · counterfeit checks drawn on the SunTrust Bank account of Piedmont Hospital.

And in addition to this already overwhelming evidence that investigators marshalled against her, Lee herself admitted — under oath, in court — to conspiring to devise a scheme to defraud banks of money by submitting materially false information to cause the Postal Service to use interstate wire communications in furtherance of the scheme, and to executing a scheme to

defraud SunTrust and Flagler Banks. She further admitted to using K.M.'s identity to acquire credit at Flagstar Bank. Put simply, by the time her defense counsel was engaged, the die had been cast.

Given the overwhelming evidence against her, it would not have been reasonable for Lee to have proceeded to trial on any count. She has therefore failed to meet her burden of proving prejudice at the plea-stage of her prosecution. *Diveroli*, 803 F.3d at 1265.

### 3. Lee has failed to meet her burden of proving prejudice at the appeals stage of her prosecution.

With respect to the appeals stage, Lee claims that defense counsel did not perfect all of the arguments Lee made in her investigation- and plea-stage claims above, specifically pointing to her *Kastigar* argument. (Doc. 88-1 at 8). To show prejudice at the appeals stage, a defendant must show "a reasonable probability that an appeals brief raising these issues would have prevailed." *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000). But as explained above, none of Lee's prejudice arguments has merit. Thus, any appeals brief raising these meritless claims would not have succeeded.

### Statement as to Evidentiary Hearing

An evidentiary hearing is not required because the record is sufficient for the Court to determine the issues. It is well settled in this circuit that a district court is not required to hold an evidentiary hearing every time a § 2255 claim is raised. A federal habeas corpus petitioner is entitled to an evidentiary hearing only where the petitioner alleges facts that, if proven, would entitle him to relief. *Futch v. Dugger*, 874 F.2d 1483, 1485 (11th Cir. 1989). "A hearing is not required on

patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record." *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (quoting *United States v. Guerra*, 588 F.2d 519, 520-21 (5th Cir. 1979)). After reviewing the record, it is within a court's sound discretion as to whether to conduct an evidentiary hearing. *United States v. Lagrone*, 727 F.2d 1037, 1038 (11th Cir. 1984). As shown above, each one of Lee's claims is patently frivolous, is affirmatively contradicted by the record, and/or constitutes unsupported generalizations. The following chart illustrates why a hearing is not warranted here:

| Lee's claims that she was prejudiced by the fact that: | Why a hearing is not required |
|---|---|
| Counsel failed to challenge the indictment on the ground that it does not include the words "Filed in Open Court" on its face. | This claim of prejudice is patently frivolous. |
| Counsel failed to object to the indictment based on the ground that it states "Foreman," and not "Grand Jury Foreman." | This claim of prejudice is patently frivolous. |
| Counsel failed to object to the indictment because it was signed on the same day that Lee was released from custody. | This claim of prejudice is patently frivolous. |
| Counsel failed to object to the indictment on the ground that count two did not allege an essential element. | This claim of prejudice is patently frivolous and affirmatively contradicted by the record. |
| Counsel failed to object to the indictment on the ground that count two did not fully inform her of the charge against her. | This claim of prejudice is patently frivolous and affirmatively contradicted by the record. |
| Counsel failed to raise a Speedy Trial Act claim. | This claim of prejudice is patently frivolous and affirmatively contradicted by the record. |
| Counsel failed to seek a hearing under *United States v. Kastigar*. | This claim of prejudice is patently frivolous and affirmatively contradicted by the record. |
| Counsel failed to interview 21 people listed in the PSR. | This claim of prejudice is patently frivolous and is based on unsupported generalizations. |
| Counsel did not interview or subpoena witnesses or documents. | This claim of prejudice is patently frivolous and is based on unsupported generalizations. |
| Counsel did not obtain the previous attorney's case file. | This claim of prejudice is patently frivolous and is based on unsupported generalizations. |
| Counsel did not show Lee all of the evidence in counsel's possession. | This claim of prejudice is patently frivolous and is based on unsupported generalizations. |
| Counsel did not explain the elements of the crimes charged to her. | This claim of prejudice is patently frivolous and affirmatively contradicted by the record. |
| Counsel did not inform her that she could plead guilty to just one count. | This claim of prejudice is patently frivolous. |
| Counsel incorrectly told her that even if she only had her picture taken, she would still be guilty of aiding and abetting. | This claim of prejudice is patently frivolous and affirmatively contradicted by the record. |
| Counsel incorrectly told her that she need not have intended to defraud the bank to be guilty of the offenses charged against her. | This claim of prejudice is patently frivolous and affirmatively contradicted by the record. |
| Counsel incorrectly told her that as long as she "associated" with someone, she was guilty of conspiracy. | This claim of prejudice is patently frivolous and affirmatively contradicted by the record. |
| Counsel failed to explain that facts in the PSR not objected to, are agreed to. | This claim of prejudice is patently frivolous. |
| Counsel did not raise each of the above arguments on direct appeal. | This claim is patently frivolous, affirmatively contradicted by the record, and is based on unsupported generalizations. |

## Certificate of Appealability

As amended effective December 1, 2009, Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that a district court must issue or deny a Certificate of Appealability ("COA") at the time it enters a final order adverse to the defendant. 28 U.S.C. foll. § 2255, Rule 11. In this case, Lee is not entitled to a COA.

Under 28 U.S.C. § 2253, the Court may issue a COA only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In addition, the COA must indicate which specific issue or issues satisfy the required showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(3). In order to obtain a COA, a petitioner must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 475 (2000).

Here, Lee has not made a substantial showing of the denial of a constitutional right, and she is not entitled to a COA.

**Conclusion**

Lee's 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence should
be denied, and the Court should decline to issue a certificate of appealability.

Respectfully submitted,

BYUNG J. PAK
*United States Attorney*

/s/ J. Elizabeth McBath
*Assistant United States Attorney*
Georgia Bar No. 297458

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
(404)581-6000; fax (404)581-6181

**CERTIFICATE OF COMPLIANCE AND SERVICE**

I certify that this document was prepared using Book Antiqua 13 point font, and that I have caused a copy to be electronically filed with the Clerk of Court using the CM/ECF system, and to be delivered to the following non-CM/ECF participant by depositing a copy in the United States mail in an envelope bearing sufficient postage for delivery:

Lisa Lee
#55562-019
FCI Aliceville
Satellite Camp
P.O. Box 487
Aliceville, AL 35442

This 26th day of March, 2018.

/s/ J. Elizabeth McBath
*Assistant United States Attorney*